IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-02176-REB-KLM

DYWAND DAYTRON JULIEN,

    Plaintiff,

v.

KEVIN MILYARD, in his individual capacity, and as Superintendent/Warden employed by the State of Colorado Department of Corrections, in his official capacity,
CAROL SOARES, in her individual capacity, and in her official capacity as associate warden employed by the State of Colorado Department of Corrections,
LLOYD WAIDE, in his individual capacity, and his official capacity as Major employed by the State of Colorado Department of Corrections,
MICHELLE NYCZ, in her individual capacity, and her official capacity as Captain employed by the State of Colorado Department of Corrections,
WESLEY WILSON, in his individual capacity, and his official capacity as Case Manager employed by the State of Colorado Department of Corrections,
JAMES OLSON, in his individual capacity, and his official capacity as Case Manager employed by the State of Colorado Department of Corrections,
JOHN WATTS, in his individual capacity, and his official capacity as Case Manager employed by the State of Colorado Department of Corrections, and
ARISTEDES W. ZAVARAS, in his individual capacity, and his official capacity as Executive Director employed by the State of Colorado Department of Corrections,

    Defendants.
_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion to Dismiss** [Docket No. 24; Filed March 10, 2008] (the "Motion"). Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. Colo.LCivR. 72.1.C., the matter has been referred to this Court for recommendation. The Court has reviewed the Motion, Plaintiff's Response [Docket No. 28; Filed March 27, 2008], Defendants' Reply [Docket No. 30; Filed April 11, 2008], the entire case file, and the

1

applicable law and is sufficiently advised in the premises. Accordingly, the Court respectfully **RECOMMENDS** that the Motion be **GRANTED**, as set forth below.

**I.      Statement of the Case**

At the time of filing, Plaintiff was incarcerated at the Sterling Correctional Facility ("SCF"). On December 12, 2007, Plaintiff filed his *pro se* Amended Complaint pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983 [Docket No. 10], alleging violations of his Fourteenth Amendment due process rights, as well as violations of 42 U.S.C. § 1985(3), 42 U.S.C. § 1986, and 42 U.S.C. § 1988.

The following facts are taken from Plaintiff's Amended Complaint. Plaintiff alleges that on June 16, 2006, he was removed from the general prison population at the Colorado Territorial Correctional Facility ("CTCF") and transferred to Colorado State Prison ("CSP") due to "pending investigation of Colorado Department of Corrections code of penal discipline class I, Rule 19 violation, 'Solicitation of Staff Misconduct . . . .'" *Amended Complaint* [#10] at 4. Next, on June 19, 2006, Plaintiff alleges that he was transferred to SCF "for determination of administrative and disciplinary hearing proceedings." *Id.* On July 5, 2006, Plaintiff alleges he was served with notice for an administrative segregation hearing. *Id.* at 5. The administrative segregation proceedings were held on July 7, 2006, at which time the classification committee decided not to assign Plaintiff to administrative segregation on the grounds that there was a lack of evidence that would justify his placement in administrative segregation. *Id.* On July 12, 2006, Defendant Milyard reversed the decision of the classification committee and ordered that Plaintiff be placed in administrative segregation. *Id.* Plaintiff appealed this decision on July 17, 2006, and on

August 24, 2006, Defendant Soares remanded Plaintiff's case for another administrative segregation proceeding. *Id.* at 5-6. Therefore, on September 6, 2006, a second administrative segregation hearing was held, and as a result of this hearing, Plaintiff was placed in administrative segregation based upon evidence that had been previously unavailable at the first hearing. *Id.* at 6. Plaintiff alleges that prison officials violated his due process rights by failing to abide by CDOC Administrative Regulation 600-02, specifically AR 600-02(IV)(v)(1), which provides that "[a]ny inadvertent procedural irregularity shall not constitute grounds for the setting aside, vacating or modifying a classification decision except upon a clear showing of prejudice to the offender." *Response* [#28] at 5. Plaintiff alleges that "[a]s a result of the acts by defendant's [sic] [Plaintiff] was unlawfully confined to administrative segregation for a period of 240 day's [sic]." Plaintiff seeks damages in addition to attorneys fees and costs. *Amended Complaint* [#10] at 14.

All Defendants excluding Defendant Aristedes W. Zavaras[1] have filed a Motion to Dismiss Plaintiff's claims, asserting that Plaintiff's Complaint fails to state a claim on which relief may be granted. *Motion* [#24] at 3-6.

## II.     Standard of Review

---

[1]By Motion dated August 4, 2008, Plaintiff requested that the Court substitute Aristedes W. Zavaras, current executive director of CDOC, for Joe Ortiz, the former executive director of CDOC [Docket No. 39]. The Court granted Plaintiff's Motion by Minute Order dated August 12, 2008 [Docket No. 41], and a waiver of service for Aristedes W. Zavaras was returned executed on August 14, 2008 [Docket No. 42]. Defendant Zavaras' Answer is not due until October 14, 2008, and as of the date of this Order, Defendant Zavaras had not yet filed an answer or other responsive pleading. Although Defendant Zavaras has not joined in the Motion to Dismiss, because the Court finds that Plaintiff's Complaint fails to state a claim upon which relief may be granted, as set forth below, the Court will recommend that the Complaint be dismissed as to all Defendants.

When deciding a Motion to Dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the Plaintiff. *Erickson v. Pardus*, ____ U.S. ____, 127 S. Ct. 2197 (2007). Courts should look to the specific allegations of the complaint to determine whether they plausibly support a legal claim for relief. *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007). That is, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *TON Services, Inc. v. Qwest Corp.*, 493 F.3d 1225, 1235 (10th Cir. 2007). The complaint must sufficiently allege facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed. *Lane v. Simon*, 495 F.3d 1182 (10th Cir. 2007). As the Tenth Circuit has explained, "the mere metaphysical possibility that <u>some</u> plaintiff could prove <u>some</u> set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that <u>this</u> plaintiff has a reasonable likelihood of mustering factual support for <u>these</u> claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174 (10th Cir. 2007). Additionally, a court evaluating a complaint tested by a motion to dismiss may only consider the complaint and any documents attached to it as exhibits. *Hall*, 935 F.2d at 1112; *see also Erickson*, 127 S. Ct. at 2200 (evaluating sufficiency of complaint by reference only to the allegations of the complaint). Here, Defendants assert that Plaintiff's Complaint fails to state a claim for relief.

Finally, because Plaintiff here is proceeding *pro se*, the Court construes his pleadings liberally. *Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1187 (10th Cir. 2003). Even so, Plaintiff still retains "the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.

1991). This burden remains because a "*pro se* plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Id.*

## III.     Analysis

### 1.     § 1983 Conspiracy Claims

Defendants allege that Plaintiff has failed to state a valid conspiracy claim. *Reply* [#30] at 2. In order to state a valid claim of conspiracy pursuant to § 1983, Plaintiff must allege specific facts that show agreement and concerted action among the Defendants. *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998) (citing *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994)). "Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." *Id.* The Court has reviewed the Complaint, and finds that even construing Plaintiff's allegations liberally and in the light most favorable to him, Plaintiff has presented nothing more than conclusory allegations to show agreement and concerted action among the Defendants. The Court does not find it reasonable to infer that because certain Defendants served on the administrative hearing classification committee that they were conspiring with one another and with the other Defendant prison officials to place Plaintiff in administrative segregation, and Plaintiff has provided nothing more than his conclusory allegations in support of this theory. The Court finds that Plaintiff has not sufficiently alleged facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed, and that his claim must be dismissed. *Lane*, 495 F.3d at 1182.

Accordingly, I respectfully **RECOMMEND** that the Motion be **GRANTED** and that

5

Plaintiff's conspiracy claims brought pursuant to § 1983 be **DISMISSED WITH PREJUDICE**.

   **2.    28 U.S.C. § 1985(3)**

Defendants also allege that Plaintiff fails to state a valid claim for conspiracy among the Defendants pursuant to 28 U.S.C. § 1985(3). *Reply* [#30] at 2. To state a claim for conspiracy pursuant to 28 U.S.C. § 1985(3), Plaintiff must show: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting from the conspiracy. *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)). In addition, § 1985(3) only applies to "conspiracies motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" *Id.* As set forth above, Plaintiff has provided nothing other than his conclusory allegations in support of his theory that Defendants were engaged in a conspiracy against him. In addition, the Complaint is completely devoid of any allegation that the alleged conspiracy was motivated by racial or other class-based "invidiously discriminatory animus." *Id.* The Court has construed Plaintiff's allegations liberally and in the light most favorable to him, and finds that Plaintiff has not sufficiently alleged facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed, and that his claim must be dismissed. *Lane*, 495 F.3d at 1182.

Accordingly, I respectfully **RECOMMEND** that the Motion be **GRANTED** and that Plaintiff's claims brought pursuant to § 1985 be **DISMISSED WITH PREJUDICE**.

   **3.    42 U.S.C. § 1986**

Plaintiff also asserts a claim pursuant to 42 U.S.C. § 1986. *Amended Complaint* [#10] at 4. § 1986 provides, in relevant part, "[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title . . . if such wrongful act be committed, shall be liable to the party injured . . . ." The Tenth Circuit has found that liability pursuant to § 1986 depends on the existence of a valid claim brought pursuant to § 1985. *Wright v. No Skiter Inc.*, 774 F.2d 422, 426 (10th Cir. 1985) (citing *Brown v. Chaffee*, 612 F.2d 497, 502 (10th Cir. 1979)). Therefore, as the Court has found that Plaintiff's § 1985 claim is without merit, his § 1986 claim must also be dismissed. *Id.*

Accordingly, I respectfully **RECOMMEND** that the Motion to Dismiss be **GRANTED** and that Plaintiff's claims brought pursuant to § 1986 be **DISMISSED WITH PREJUDICE**.

**4.      42 U.S.C. § 1988**

Plaintiff asserts a claim pursuant to 42 U.S.C. § 1988. *Amended Complaint* [#10] at 4. Section 1988 provides, in relevant part, "[i]n any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985 and 1986 of this title . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . ." 42 U.S.C. § 1988(b). However, the Tenth Circuit has found that *pro se* litigants may not recover an award of attorney's fees pursuant to this statute. *Turman v. Tuttle*, 711 F.2d 148, 149 (10th Cir. 1983). "This finding seems to comport with the policy underlying § 1983, which appears to have been implemented not to compensate *pro se* litigants but to enable litigants with valid claims to present their claims without having to bear the burden of the costs." *Id.* Therefore, Plaintiff is not entitled to relief pursuant to § 1988.

Accordingly, I respectfully **RECOMMEND** that the Motion to Dismiss be **GRANTED**

7

and that Plaintiff's claims brought pursuant to § 1988 be **DISMISSED WITH PREJUDICE**.

    5.    **Fourteenth Amendment - Due Process Claim**

        A.    **Favorable Termination Requirement**

Defendants next argue that Plaintiff's Fourteenth Amendment due process claims are barred due to Plaintiff's failure to obtain a favorable termination of his administrative segregation classification. *Motion* [#24] at 3. Defendants contend that "[a] person cannot bring a § 1983 action for damages based on the allegedly invalid conviction or sentence unless the conviction or sentence has previously been invalidated . . . ." *Id.* (citing *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)). Defendants argue that prior to bringing this action, Plaintiff is required to first obtain a favorable termination of his administrative segregation classification, as Plaintiff's "maximum administrative segregation classification necessarily impacted his eligibility for earned time credit, and the duration of his confinement." *Id.* at 5. Plaintiff contends that the favorable termination requirement imposed by *Heck* does not apply to his due process claim. *Response* [#28] at 2.

*Heck v. Humphrey* involved a § 1983 claim arising out of alleged unlawful acts by state prosecutors and police officers which led to the plaintiff's arrest and ultimate conviction. 512 U.S. 477. In *Heck*, the Supreme Court held that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487. If so, the court must dismiss the complaint "unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* The Supreme Court's holding in *Heck* has also been applied to prison disciplinary convictions that deprive a

8

prisoner of good time credits. *See Edwards v. Balisok*, 520 U.S. 641 (1997). However, only claims which "necessarily implicate the fact or duration of" a prisoner's confinement are barred; claims that relate solely to a prisoner's "conditions of incarceration" are not subject to *Heck's* favorable termination requirement. *Torres v. Fauver*, 292 F.3d 141, 145 (3rd Cir. 2002). That is, the "assumption is that the incarceration that matters under *Heck* is the incarceration ordered by the original judgment of conviction, not special disciplinary confinement for infraction of prison rules." *Muhammad v. Close*, 540 U.S. 749, 752 n.1 (2004). Other courts have found that "if a favorable determination would not automatically entitle the prisoner to accelerated release, the proper vehicle for suit is § 1983. If it would so entitle him, he must first get a habeas judgment." *Clarke v. Stalder*, 121 F.3d 222, 226 (5th Cir. 1997), *distinguished on other grounds by Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 863 (5th Cir. 2004).

Accordingly, the preliminary issue before the Court is whether a favorable determination on Plaintiff's due process claim would "automatically entitle [him] to accelerated release . . . ." *Id.* Defendants contend that Plaintiff's administrative segregation classification affects the earned time credit he is eligible to receive, which they allege necessarily affects the duration of his confinement. *Motion* [#24] at 5. Defendants argue that, pursuant to CDOC's Administrative Regulations, inmates who are classified and placed in maximum administrative regulation are not eligible for earned time credits "until the first full month that they are classified at a level below administrative segregation." *Id.* (citing Administrative Regulation 550-12 (IV)(F)(1)).[2] Earned time credit is given to

---

[2]The Court may take judicial notice of agency rules and regulations. *See Ray v. Aztec Well Servs. Co.*, 748 F.2d 888, 889 (10th Cir. 1984).

9

prisoners who "demonstrate progress in work, goals and programs established by CDOC." *Id.* at 4 (citing Colo. Rev. Stat. § 17-22.5-302(1) and (2)). Defendants argue that earned time credit operates to reduce the term for which an inmate is incarcerated. *Id.* (citations omitted).

In *Muhammad v. Close*, the Supreme Court found that "administrative determinations do not as such raise any implication about the validity of the underlying conviction, and although they may affect the duration of time to be served (by bearing on the award or revocation of good-time credits) *that is not necessarily so.*" 540 U.S. at 754 (emphasis provided). In *Muhammad*, the Supreme Court also noted that the Magistrate Judge deciding the case had "expressly found or assumed that no good-time credits were eliminated by the prehearing action [the plaintiff] called into question," and, as such, the plaintiff's "§ 1983 suit challenging [the] action could not therefore be construed as seeking a judgment at odds with his conviction or with the State's calculation of time to be served in accordance with the underlying sentence." 540 U.S. at 754-55.

Like the case in *Muhammad*, the Court has reviewed the documents submitted by the parties and finds that there is no evidence that any good time or earned time credits were actually eliminated by Plaintiff's classification to administrative segregation. That is, while Plaintiff may have lost the potential to receive earned time credits, the Court notes that this is merely a theoretical, and not an actual, loss. According to the definition of earned time credits provided by Defendants, these credits appear to be awarded on a discretionary basis related to the prisoner's participation in certain programs and for demonstrating certain behaviors. Therefore, while Plaintiff *might have* received earned time credits were he not in administrative segregation, there certainly seems to be no

10

guarantee that he would necessarily have done so. In the instant case, there is no allegation that Plaintiff has actually been deprived of any earned time credit, only that he has lost the theoretical potential to earn these credits. Therefore, "a favorable determination would not automatically entitle the prisoner to accelerated release," and Plaintiff's § 1983 claim may properly proceed. *Clarke*, 121 F.3d at 226. Accordingly, the Court declines to grant Defendants' Motion to Dismiss on these grounds, and instead addresses Defendants' other arguments regarding Plaintiff's § 1983 claim.

### B. Failure to Allege a Viable Due Process Claim

Second, Defendants allege that Plaintiff has failed to state a viable due process claim, pursuant to the Fourteenth Amendment. *Motion* [#24] at 6. Plaintiff argues that he has "identified a viable Fourteenth Amendment . . . protected liberty interest claim alleging the deprivation of his civil rights from the refusal of Defendant - acting in concert - to comply with the minimal required due process protections and mandatory language contained with CDOC administrative regulation 600-02." *Response* [#28] at 4.

"The Due Process Clause guarantees due process only when a person is to be deprived of life, liberty, or property." *Chambers v. Colo. Dep't of Corr.*, 205 F.3d 1237, 1242 (10th Cir. 2000) (citation omitted). A plaintiff must make two showings in order to proceed on a procedural due process claim. *See Bartell v. Aurora Public Schs.*, 263 F.3d 1143, 1149 (10th Cir. 2001). First, he must show that he possesses a protected liberty interest. *See id.*; *Veile v. Martinson*, 258 F.3d 1180, 1184–85 (10th Cir. 2001). Second, he must show that the procedures used in addressing his liberty interest were inadequate under the circumstances. *See Bartell*, 263 F.3d at 1149. The Supreme Court has held that, for prisoners, a liberty right exists only where an interference with that right would

11

impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995); *see also Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996) ("the transfer of an inmate to a less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence") (internal quotation marks and citation omitted). The Tenth Circuit requires that district courts examine the conditions of confinement before they conclude whether such conditions impose an atypical and significant hardship on the inmate. *See Fogle v. Pierson*, 435 F.3d 1252, 1259 (10th Cir. 2006) (citing *Gaines v. Stenseng*, 292 F.3d 1222, 1225-26 (10th Cir. 2002) (reviewing dismissal of a § 1983 claim and ruling that, without "carefully examin[ing] the conditions of the prisoner's confinement," it was error to find 75-day disciplinary segregation not atypical)).

Accordingly, the Court must first examine whether Plaintiff has sufficiently alleged that he possesses a protected liberty interest. *Bartell*, 263 F.3d at 1149. Plaintiff appears to rely on his argument that the alleged violation of CDOC Administrative Regulation 600-02(IV)(v)(1) has established a protected liberty interest. *Response* [#28] at 5. However, in general, prison regulations do not create constitutionally protected rights; rather, they are meant to provide guidance to officials with regard to the administration of a prison. *See Hewitt v. Helms*, 459 U.S. 460, 469-70 (1983). Although the regulation at issue does contain mandatory language, this fact is no longer dispositive. *See* CDOC Admin. Reg. 600-02(IV)(v)(1) ("Any inadvertent procedural irregularity *shall not* constitute grounds for the setting aside, vacating or modifying a classification decision except upon a clear showing of prejudice to the offender."). As the *Sandin* court made clear, mandatory

language of a statute or regulation will not be the basis for the creation of a constitutionally protected right.  *See Sandin*, 515 U.S. at 483 ("[W] e believe that the search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause.").  Instead, the relevant question is whether the alleged violation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id.* at 484.  Accordingly, the Court finds CDOC Administrative Regulation 600-02(IV)(v)(1) does not create a protected liberty interest.

Second, as Defendants' correctly note, the mere placement in administrative segregation does not, on its own, implicate a liberty interest.  *Talley v. Hesse*, 91 F.3d 1411, 1413 (10th Cir. 1996); *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994).  The only detail provided by Plaintiff regarding whether his segregation was atypical is that he was placed in segregation for 240 days.  *Amended Complaint* [#10] at 6.  A determination of what constitutes an atypical and significant hardship necessarily includes a consideration of whether the condition in question is a dramatic departure from what would be expected of a person serving a similar sentence.  This consideration includes whether the segregation complained of (1) differs significantly from other types of segregation; (2) differs significantly from what it would have been had the prisoner remained in the general prison population; (3) increases the duration of a prisoner's sentence; (4) is for an indefinite term; and (5) furthers a legitimate interest.  *Sandin*, 515 U.S. at 484-87; *Estate of DiMarco v. Wy. Dep't of Corr.*, 473 F.3d 1334,1342 (10th Cir. 2007).

Plaintiff has failed to provide details which, if taken as true, would address many of these elements.  He does not indicate how his placement in administrative segregation

differed from his normal confinement or what activities he was forced to go without. As noted earlier, he does not indicate that his placement in administrative segregation impacted the length of his confinement. He also acknowledges that his confinement in segregation was for a definite, rather than an indefinite, term. Because Colorado inmates do not have a liberty interest in avoiding segregation, the mere duration of confinement in segregation, i.e., 240 days, does not serve to create a liberty interest. *See Templemen*, 16 F.3d at 369. Considering all of the above factors, and Plaintiff's failure to address the majority of them, I cannot find that the Complaint, even accepting its vague allegations as true, sufficiently implicates a liberty interest. Plaintiff has not alleged that the prison conditions he endured imposed an "atypical and significant hardship." *See Sandin*, 515 U.S. at 484.

As to the alleged provision of inadequate process, because Plaintiff has failed to sufficiently allege the deprivation "of any liberty to which he was entitled, no particular process was constitutionally required." *Id.* at 371. Even if that were not the case, it appears that Plaintiff has failed to identify the process he believes he should have been, but was not, afforded prior to or after his placement in administrative segregation. Instead, his allegations suggest that he simply is unhappy with the ultimate findings of the committee and the decision by prison officials to place him in administrative segregation. Plaintiff's conclusory allegations are insufficient to support the finding that he was not provided all the process he was constitutionally due.

Accordingly, as Plaintiff has both failed to show that he possessed a protected liberty interest, and that he was not provided all the process he was constitutionally due, I respectfully **RECOMMEND** that the Motion to Dismiss be **GRANTED**, and that Plaintiff's

due process claim be **DISMISSED WITH PREJUDICE** for failure to state a claim on which relief may be granted.

IV. **Conclusion**

As set forth above, I respectfully **RECOMMEND** that Defendants' **Motion to Dismiss** [Docket No. 24; Filed March 10, 2008] be **GRANTED**, and that Plaintiff's Amended Complaint be **DISMISSED WITH PREJUDICE** pursuant to Fed. R. Civ. P. 12(b)(6).

FURTHER, IT IS **ORDERED** that pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this Recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *In re Key Energy Resources Inc.*, 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996).

BY THE COURT:

__s/ Kristen L. Mix_____

United States Magistrate Judge

Dated: September 15, 2008